Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ANDREW DOHRMANN, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| INTUIT INC., | |
| Defendant. | |

## **NATURE OF THE ACTION**

1.      This is a false advertising case on behalf of individuals in low income tax brackets who used Defendant Intuit, Inc.'s electronic tax preparation and filing software known as "TurboTax."  Intuit advertised its online tax services as free to Americans of modest means only to charge them fees once they had been lured into preparing their tax returns using TurboTax's online software.  In furtherance of its scheme, Intuit manipulated internet search results to steer low-income individuals to its website with the fraudulent misrepresentations, blocked their ability to navigate to its free filing site once they clicked on its website with the misrepresentations, and purposely did not inform them of their eligibility to file their tax returns for free.

2.      Intuit's practices not only took advantage of low-income individuals but also ran afoul of its obligation to permit these taxpayers to file for free.  In 2002, the Internal Revenue Service developed the "Free File" program, under which taxpayers whose income falls below a certain threshold can e-file their taxes for free.  The IRS, instead of creating its own software to facilitate free e-filing, contracted with private companies, including Intuit, to provide the service.  The governing agreement requires Intuit to provide free e-filing services; in return, the IRS agreed not to develop and provide a competing e-filing service.  The agreement required Intuit to make its free product available and to promote it to achieve maximum public awareness.

3.      Intuit nevertheless added code to its website that hid its actual free e-filing service from the people for whom that service was intended.  According to ProPublica, which first reported the misconduct, the code added by Intuit "is deliberately saying: 'Google, we don't want you here.  Do not bring us traffic.'"  By contrast, the TurboTax page that puts people on track to pay to file signals to Google that it should be listed in search results.

4.      Compounding its deception, after luring low-income taxpayers to start preparing their returns with a competing online portal misleadingly titled TurboTax "Free Edition," and even after those taxpayers input information revealing themselves to be eligible for TurboTax's free product, Intuit manipulates them into paying for product upgrades and upsells—marketing

CLASS ACTION COMPLAINT
CASE NO.

tactics that are specifically prohibited with respect to qualifying free filers under the IRS agreement.

5. The consequence of Intuit's (and other providers') misconduct is that while 100 million low-income taxpayers—often students, elderly people on fixed incomes, and people on public assistance—qualify for free e-filing of their return, less than 2.5 million people use a free service.

6. Plaintiff, on behalf of a class of similarly situated individuals, brings this action to put a stop to Intuit's misleading and predatory conduct and to recover their damages.

## PARTIES

7. Plaintiff Andrew Dohrmann is a citizen and resident of Moraga, California.

8. Defendant Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Intuit and class members are domiciled in different states.

10. The Court has personal jurisdiction over Intuit because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the conduct at issue in this case occurred in this District.

## INTRADISTRICT ASSIGNMENT

12. Assignment to the San Jose Division is appropriate under Local Rule 3-2(c) because Intuit is headquartered in Mountain View, California and a substantial part of the conduct at issue in this case occurred in Santa Clara County.

CLASS ACTION COMPLAINT
CASE NO.

## **PLAINTIFF-SPECIFIC ALLEGATIONS**

13.     Plaintiff Andrew Dohrmann is a college student residing in Moraga, California. For both 2017 and 2018, Mr. Dohrmann's income was under $20,000.  He used TurboTax to file his tax returns in both 2017 and 2018.  Mr. Dohrmann filed his 2017 federal tax return through TurboTax on or about February 27, 2018, and he filed his 2018 federal tax return through TurboTax on or about April 14, 2019.

14.     Before purchasing TurboTax e-filing services in both 2017 and 2018, Mr. Dohrmann saw representations by Intuit on the internet and on television that its tax preparation services are "free."  Representations Mr. Dohrmann saw include: "Free IRS Fed Filing Online"; "100% Free Tax Filing, $0 Fed, $0 state"; "Free Federal and State Taxes"; "Absolutely Free"; "You'll pay absolutely nothing to file your federal and state taxes online— we're your free tax filing solution"; "E-File Taxes Online for Free Today"; "Free Edition"; "Turbotax Free is free. Free, free free free"; and other similar representations that he would not need to pay to file his return through TurboTax.

15.     Mr. Dohrmann factored in Intuit's representations in deciding to navigate to the TurboTax website and begin inputting his tax information.  Contrary to Intuit's representations, after Mr. Dohrmann inputted his information demonstrating his qualification for free e-filing, Intuit charged him for its services—approximately $77 in 2017 and $105 in 2018.

16.     Had Intuit accurately described the nature of its tax preparation services and made clear its intent to assess a fee, Mr. Dohrmann would not have navigated to TurboTax's website and inputted his information.

17.     Had Intuit made its free tax filing product accessible, Mr. Dohrmann would have used it, rather than the paid version.

18.     Mr. Dohrmann found the TurboTax website easy to use, and would like to continue to use it in the future.  But, because of Intuit's fraud and other misconduct described in this complaint, Mr. Dohrmann does not trust Intuit's representations about its tax preparation and filing services.  As a result, although Mr. Dohrmann would like to use TurboTax again, he

CLASS ACTION COMPLAINT
CASE NO.

will not do so unless Intuit takes sufficient steps to ensure the accuracy of its representations about its services.

## COMMON FACTUAL ALLEGATIONS

19.      Intuit—developer of the TurboTax tax preparation and filing software—is the market leader in consumer tax software, holding between 60% and 70% of the online tax preparation market.  The TurboTax software allows taxpayers to prepare and file tax returns online.

20.      Millions of Americans prefer to file their taxes electronically, both for convenience and because tax refunds for electronical filings are processed faster than for conventional filings.

21.      Though Intuit is required under an agreement with the IRS to provide its e-filing services for free to low-income taxpayers, Intuit has instead fraudulently lured taxpayers into its paid product while hiding the free version.  Intuit has done so through a saturation advertising campaign, which in 2018 featured advertisements with the slogan "TurboTax Free is free. Free, free free free."

22.      With its deceptive practices, Intuit exploited vulnerable low-income members of society including students, the elderly, and the impoverished in order to increase its revenues. Its efforts have been successful: In 2018, Intuit earned $2.5 billion in revenue derived from its TurboTax segment, a $300 million increase from 2017 and a $500 million increase from 2016.

A.      **The Free File Program**

23.      Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 to restructure, modernize, and improve taxpayer protections and rights.  A central feature of the Act was its command to modernize computer systems and business processes to offer expanded electronic filing.  The IRS, as part of its mandate to improve the tax preparation and filing process for taxpayers, made free online tax preparation and filing services available for taxpayers meeting certain income criteria by entering into a partnership agreement—the "Free File Agreement" or "Agreement"—with the Free File Alliance, LLC ("Alliance").  The Alliance is a private sector consortium of tax software companies that includes Intuit.  Those

CLASS ACTION COMPLAINT
CASE NO.

eligible for free tax services include "those taxpayers with an Adjusted Gross income equal to or less than 70 percent of all United States taxpayers or below for the prior year, including those least able to afford e-filing tax returns, based upon verifiable statistics in their tax return[.]"

24.     The primary objective of the Agreement is "extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."  The Agreement states that "to serve the greater good . . . the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own."

25.     Hence, under the Agreement, Intuit (and other Alliance members) agreed to provide free online tax preparation and filing services "to taxpayers least able to afford e-filing tax returns."  In return, the IRS agreed not to compete with Intuit and other Alliance members, not to enter the software and e-filing services marketplace, and to link to the Alliance members' online tax preparation services websites.

26.     Intuit's agreement to provide free tax preparation and filing services for certain taxpayers followed years of competitive pressure from various state governments that had begun offering their own free online tax services to taxpayers.  In SEC filings, Intuit acknowledged the challenges those programs presented: "We also face potential competitive challenges from publicly funded government entities that offer electronic tax preparation and filing services at no cost to individual taxpayers."  By entering into the public-private partnership with the IRS, Intuit countered the competition from government-provided free tax programs by controlling its own free filing platform.  It thereby attracted to its own website millions of taxpayers seeking out the free tax services the federal government sought to make available.

27.     Intuit noted in SEC filings that its participation in the Alliance "has kept the federal government from being a direct competitor to Intuit's tax offerings."

28.     The Agreement has been updated several times since it became effective in 2002. In October 2018, the IRS and the Alliance entered into their Eighth Memorandum of

Understanding, which expires in 2021. *See* Eighth Memorandum of Understanding on Service Standards and Disputes Between the Internal Revenue Service and Free File, Incorporated, https://www.irs.gov/pub/irs-utl/Eight%20Free%20File%20MOU.pdf (last visited May 13, 2019). Under the current version of the Agreement, Alliance members, including Intuit, remain obligated to provide free tax preparation and filing services to low-income Americans.

29.     Despite the Agreement's purpose of making free tax services available to Americans, it has been grossly underutilized. The IRS reported that over the years only 51.1 million federal tax returns have been filed using free tax filing products, representing 3% of all people eligible to use those services. In 2018, more than 100 million taxpayers were eligible to file for free; only about 2.5 million did so.

30.     The conduct of Intuit, the market leader in online tax preparation and filing, has substantially contributed to the underutilization by taxpayers of free filing services. And, as taxpayers have been denied access to free filing services, Intuit's revenues from taxpayers have grown.

### B.    Intuit's Deception

31.     With respect to marketing, the Free File Agreement provides that the "Parties will coordinate with each other their respective marketing of these Free Services to provide uniformity and maximize public awareness."

32.     According to the IRS, "The Agreement . . . provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service" and "[i]t is also expected that Free File Alliance products will be equivalent to those offered for sale on the commercial market and thus are expected to have all of the features and operability of those commercial products."

33.     The current Agreement, moreover, flatly prohibits "Other Sales and Selling Activity: No marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program."

34.     In contravention of these and other obligations imposed by the Agreement, Intuit has deceived taxpayers into paying for its e-filing services.

35.     First, Intuit has deliberately hidden the free version of its software from Google search by adding code on its website directing Google and other search engines not to list the free product in online search results.  The code Intuit added can be found in a file called robots.txt or in an HTML tag, both of which only appear in a website's underlying code if they have been affirmatively added.  This code—which one web developer described as "a big 'No, don't go any further' sign"—is typically used on web pages that designers do not want to be public, like sites for internal use only.  Here, Intuit used that code on its free filing portal, a site it had agreed to make accessible to taxpayers.

36.     Second, Intuit has engaged in an aggressive and misleading marketing and advertising campaign, founded on its provision of "free" tax services.  But instead of directing taxpayers to its truly free tax software, Intuit leads them to a paid version.

37.     Third, Intuit has misleadingly labeled its private software to create confusion among prospective taxpayers and make it more likely that they would pay for needed tax filing services.

38.     Intuit named its Free File Agreement software TurboTax "Freedom Edition."  In 2018, taxpayers with an adjusted gross income of $34,000 or less, those who are eligible for the Earned Income Tax Credit, or those on active military duty with an adjusted gross income of $66,000 or less, are eligible to file a tax return for free using Turbo Tax "Freedom Edition."  Freedom Edition is a full-featured tax filing software system that facilitates the filing of federal tax returns for free, even if they are complex.  In addition to the Form 1040, Freedom Edition provides free access to over 100 other tax forms, including Schedules 1 through 6, 1099-MISC, and 1040 Schedules A-E, EIC, F, H, and J.

39.     Intuit also provides a private, far more limited tax preparation software that it named TurboTax "Free Edition."  Free Edition is unconnected to the Free File Program.  Intuit uses Free Edition to attract taxpayers to its website and prompt them to pay for add-on features.

40.     Free Edition lacks many commonly used tax forms and functions, rendering it insufficient for a millions of Americans with a low income, including those paying off student loans.  Free Edition allows only for "simple tax returns that can be filed on Form 1040 without

7

any attached schedules."  Taxpayers whose returns have even modest levels of complexity, such as itemized deductions, credits, or incomes reportable on Schedules 1 to 6, cannot prepare their returns using TurboTax Free Edition and are instead prompted to use TurboTax's paid versions—(1) "Deluxe" ($59.99 and up); (2) "Premier" ($79.99 and up); or (3) "Self-Employed" ($119.99 and up).

41.     Taxpayers who attempt to file at no charge using Free Edition are prompted to pay even after inputting information sufficient to notify Intuit that they qualify for the truly free Freedom Edition.

42.     According to a former Intuit employee, a new employee once proposed that customers who go through TurboTax's filing process and input information demonstrating their eligibility for free filing should receive a "hard recommendation" and be routed to a truly free product.  The response to this suggestion was laughter, and then other meeting attendees changed the subject.  The same former employee explained that Intuit has "ways of detecting if you're paying too much, but they just don't do it."

43.     Freedom Edition is hidden from those searching for it online and is, moreover, easily confused with Free Edition.

44.     Intuit has aggressively marketed the Free Edition through online and televised advertising, including a series of recent television advertisements with the slogan "Turbotax Free is free. Free, free free free."

45.     A former Intuit employee reported that "[t]he entire strategy is make sure people read the word 'free' and click our site and never use" an actually free product.  He added that the "vast majority of people who click" on the Free Edition "will not pay $0."

46.     Examples of TurboTax's deceptive representations include the following:

**100% Free Tax Filing, $0 Fed, $0 State | TurboTax® Free - Intuit**
https://turbotax.intuit.com/personal-taxes/online/free-edition.jsp ▼
★★★★★ Rating: 4.8 - 37,953 reviews
**Free** federal taxes and state taxes. ... You'll pay nothing to file your simple federal and state taxes online—we're your **free** tax filing solution. ... e-File your federal and state tax return with direct deposit to get your fastest tax refund possible.
What Is an IRS 1040 Form? · What is a W-2 Form? · Student Loan Interest
You've visited this page 2 times. Last visit: 5/12/19

8



47.     The actually free, full-featured "Freedom Edition" is not conspicuously listed on TurboTax's website.  Intuit offers Freedom Edition through a separate website and makes it impossible to navigate directly to the Freedom Edition website from the TurboTax website.

48.     Intuit's practices confuse and mislead taxpayers by concealing the truly free edition of TurboTax.  As of the date of this complaint, if "TurboTax Free" is typed into Google, the top search result is a link to TurboTax's "Free Edition" with the "Freedom Edition" nowhere on the search result list.

49.     Intuit actively conceals the Freedom Edition even when asked about it directly. In one reported example, a graduate student with income of approximately $16,000 asked a TurboTax agent why there were no links to the Freedom Edition on its website.  The TurboTax agent said, "Because it is an IRS product we built for them."  When the student asked if TurboTax was managing the product, the agent replied, "No, the IRS is the one managing it." Those statements were false.  Like Mr. Dohrmann, the student ended up paying to file his taxes despite qualifying for free filing.  There have been several reports of similar statements by TurboTax agents distancing the company from its truly free product.

C.      **The Truth Emerges**

50.     On April 22, 2019, ProPublica, a self-described "independent, nonprofit newsroom that produces investigative journalism with moral force," revealed that TurboTax has been deliberately steering low-income taxpayers away from Free File Agreement-affiliated tax services into its own paid software.  *See* Justin Elliot and Lucas Waldron, *The TurboTax Trap: Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, ProPublica (April 22, 2019) (available at https://www.propublica.org/article/turbotax-just-tricked-you-

into-paying-to-file-your-taxes) (last visited May 13, 2019).  Investigative journalists at ProPublica ran a number of scenarios through TurboTax's home page for low-income workers, such as a housekeeper earning $29,000 annually and a person working at Walgreen's.  When the journalists progressed through the TurboTax workflow, they were uniformly told they would need to pay a fee to file a return, despite Intuit's representations of "FREE Guaranteed."

51.     ProPublica examined the source code on TurboTax's website, and determined that if one begins the process of preparing taxes on TurboTax.com, the code makes it impossible to navigate to the truly free version of the site.

52.     At the time of the ProPublica article, even when taxpayers searched specifically for "TurboTax Freedom Edition," they were taken to a page with two buttons (reproduced below): "see if you qualify" and "start for free."  Whereas clicking on the "see if you qualify" button navigated taxpayers to the truly free software, clicking on "start for free" navigated taxpayers to the paid version.



CLASS ACTION COMPLAINT
CASE NO.

53.     In a follow-up article published April 26, 2018, ProPublica confirmed, after consulting with technical experts, that Intuit deliberately hid its truly free edition from Google Search.  *See* Justin Elliot, *The TurboTax Trap: TurboTax Deliberately Hid Its Free File Page From Search Engines*, ProPublica (April 26, 2019) (available at https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines) (last visited May 13, 2019).

54.     On April 28, 2019, Intuit announced it had changed the code on its Free File page so that the actually free version of TurboTax is no longer hidden from Google and other search engines.  Intuit did not provide any further details or explanation.

55.     Since publication of the ProPublica article, taxpayers who sought but were unable to obtain free tax preparation and filing services have come forward, including the following:

- An active service member was charged $96 to file taxes.
- An 87-year-old on social security with an adjusted gross income of $11,000 had to pay $124.98 to file taxes.
- An unemployed woman recovering from chemotherapy with two disabled sons whose household earned approximately $30,000 was charged $200.  The woman said, "Those $200 would have helped pay for rent."
- A freelancer earning $15 an hour was charged $154, and said, "To suddenly be saddled with [a] $154 fee for a service I will only use one day out of the year, when I file, is the worst kind of injustice for someone in my position."
- A man earning $5,000 a year paid $103.95 to file.
- A contractor earning $14,500 a year was charged $169 to file taxes.  The contractor said, "That was a whole 1% of my total income . . . . How are they allowed to lie like this?"

56.     Congress has also voiced outrage at Intuit's wrongdoing.  In an April 29, 2019 letter to the Federal Trade Commission, Rep. Katie Porter, Congresswoman for California's 45th Congressional District, attributed the fact that less than 3% of eligible taxpayers have used

CLASS ACTION COMPLAINT
CASE NO.

the Free File Program to Intuit's misdirection.  According to Congresswoman Porter, "As a result of upselling and marketing, families end up spending an estimated billion dollars a year in unnecessary filing fees."

57.     Congresswoman Porter further noted that the misconduct was "particularly concerning in light of the [Alliance] companies' recent lobbying against the IRS creating a Free File portal of its own."

58.     Sen. Ron Wyden, ranking member of the Senate Finance Committee, similarly stated that "ProPublica's latest reporting provides more evidence of dirty tricks from Intuit. Customers eligible to file for free were allegedly denied refunds and given false information about the Free File program."

59.     On May 9, 2019, four members of the House Ways and Means Committee— Reps. Richard E. Neal, Kevin Brady, John Lewis, and Mike Kelly—wrote in a letter to the IRS that the Free File Program's mission of providing "disadvantaged and underserved taxpayers with the ability to file their federal income taxes for free" is not being accomplished, and requested a review of "marketing practices for the program, current oversight of the program, and [to] identify additional opportunities to improve taxpayer participation in the program."

60.     State regulators have already opened probes into Intuit's improper conduct.  On May 10, 2019, the New York Department of Financial Services announced that it had launched an investigation of Intuit, as well as several other Alliance members.

61.     Even apart from its Agreement with the IRS, Intuit's conduct violates federal and state prohibitions on the use of "bait-and-switch" advertising practices.  Federal regulations provide that, "[e]ven though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception."  16 C.F.R. § 238.2.

62.     The FTC advises businesses: "If you advertise online, remember the rules and guidelines that protect consumers also help businesses by maintaining the credibility of the Internet as a marketing medium.  In addition, truth-in-advertising standards apply if you sell computers, software, apps, or other products or services."

**CLASS ACTION ALLEGATIONS**

63.    Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following Class and Subclass:

**Class**

All individuals in the United States who, between 2015 and the present, paid a fee to file a federal income tax return through TurboTax, and qualified to file such tax return for free under the IRS Free Filing Program.

**Subclass**

All individuals in California who, between 2015 and the present, paid a fee to file a federal income tax return through TurboTax, and qualified to file such tax return for free under the IRS Free Filing Program.

64.    The following persons and entities are excluded from the Class: Intuit and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the class definition, including proposing additional subclasses, based upon discovery and further investigation.

65.    **Numerosity.**  Class members are so numerous that joinder is impracticable.  At least tens of thousands of individuals were deceived by Intuit's scheme to defraud.

66.    **Typicality.**  Plaintiff's claims are typical of the claims of all class members. Plaintiff, like all class members, paid Intuit a fee to file a federal income tax return through TurboTax, and would not have done so had Intuit refrained from making fraudulent misrepresentations.

67.    **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class. They have no interests antagonistic to the interests of other class members and are committed to vigorously prosecuting this case.  Plaintiff has retained competent counsel experienced in the prosecution of consumer protection class actions.

CLASS ACTION COMPLAINT
CASE NO.

68.     **Commonality and Predominance.**  Questions of law and fact common to the class members predominate over questions that may affect only individual class members. Questions of law and fact common to the Class include:

a.      Whether Intuit's online representations that its TurboTax service was guaranteed to be free were false and misleading in view of the charges Intuit imposed on Plaintiff and class members;

b.      Whether Intuit's online representations that its TurboTax service was guaranteed to be free were designed to, and did, induce Plaintiff and class members to use TurboTax, and spend time gathering and inputting factual details to submit their tax returns, before being informed that Intuit's services were not actually free;

c.      Whether Intuit's online representations that its TurboTax service was guaranteed to be free would be important to a reasonable consumer's decision whether to use TurboTax to prepare and file a tax return;

d.      Whether Intuit's online representations that its TurboTax service was free constituted bait-and-switch advertising;

e.      Whether Intuit engaged in other improper conduct in furtherance of its misrepresentations, including manipulation of software source code and online ad placements to impede low-income taxpayers' ability to discover and navigate to its free tax filing website;

f.      Whether Intuit derived ill-gotten gains from its conduct alleged herein that should be restored to Plaintiff and class members;

g.      Whether Plaintiff and class members are third-party beneficiaries of Intuit's contract with the Internal Revenue System (the "Agreement");

h.      Whether Intuit breached its obligations under the Agreement;

i.      Whether Intuit's conduct alleged herein violates California consumer protection statutes;

j.      Whether Intuit should be enjoined from continuing to perpetrate its scheme described herein; and

CLASS ACTION COMPLAINT
CASE NO.

1       k.     The amount of damages or restitution to which Plaintiff and class

2 members are entitled.

3      69.    **Superiority**.  A class action is superior to all other available methods for the fair

4 and efficient adjudication of this controversy.  Because the amount of each individual class

5 member's claim is small relative to the complexity of the litigation, and because of Intuit's

6 financial resources, class members are not likely to pursue legal redress individually for the

7 violations detailed in this complaint.  Individualized litigation would significantly increase the

8 delay and expense to all parties and to the Court and would create the potential for inconsistent

9 and contradictory rulings.  By contrast, a class action presents fewer management difficulties,

10 allows claims to be heard which would otherwise go unheard because of the expense of

11 bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and

12 comprehensive supervision by a single court.

13      70.    **Injunctive Relief.**  Class certification is also appropriate under Rules 23(b)(2)

14 because Intuit acted and refused to act on grounds generally applicable to the Class, thereby

15 making appropriate final injunctive relief with respect to the members of the Class as a whole.

## FIRST CLAIM FOR RELIEF
### Intentional Misrepresentation
### (On Behalf of the Class)

19      71.    Plaintiff incorporates all allegations set forth above.

20      72.    Plaintiff brings this claim on behalf of the class under California law.

21      73.    In the course of conducting its business of providing tax preparation and filing

22 services, Intuit intentionally made material misrepresentations to Plaintiff and class members.

23      74.    Intuit falsely represented that its TurboTax service was guaranteed to be free, for

24 the purpose and with the effect of inducing Plaintiff and class members to provide detailed tax-

25 related information on Intuit's online TurboTax portal.  At the end of that process, Intuit

26 revealed that its services were not, in fact, free and assessed Plaintiff and class members a

27 substantial fee.

28

CLASS ACTION COMPLAINT
CASE NO.

75.     Intuit knew that the misrepresentations alleged herein were false at the time Intuit made them.

76.     In making the misrepresentations alleged herein, Intuit intended that Plaintiff and class members rely on them and purchase its TurboTax services.

77.     Plaintiff and class members reasonably and justifiably relied to their detriment on Intuit's intentional misrepresentations.

78.     Intuit's false representations that its tax services would be free are objectively material.  A reasonable person would attach importance to them and, in making purchase decisions, would be induced to act on the information Intuit provided.  Reliance on Intuit's false representations may, therefore, be presumed as a matter of law.

79.     Intuit's intentional misrepresentations directly and proximately caused Plaintiff and class members to incur ascertainable losses, by paying for TurboTax services.

80.     Intuit directly benefited from, and was improperly enriched by, its systemic intentional misrepresentations.

81.     Intuit acted with malice by engaging in the conduct alleged herein, which was specifically intended by Intuit to cause substantial injury to Plaintiff and class members.

82.     Intuit's conduct alleged herein constitutes fraud because it involved intentional misrepresentations, deceit, and concealment of material facts known to Intuit, and was done with the intent to cause injury to low-income individuals in search of affordable tax preparation and filing services.

83.     Plaintiff and class members are entitled to actual and punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the Class)

84.     Plaintiff incorporates all allegations set forth above.

85.     Plaintiff brings this claim on behalf of the class under California law.

CLASS ACTION COMPLAINT
CASE NO.

86.     Intuit made false representations to Plaintiff and class members which Intuit did not intend to keep, and which Intuit in fact did not keep, to induce Plaintiff and class members to purchase Intuit's TurboTax services.  Plaintiff and class members reasonably relied on Intuit's false promises and did not receive the free tax preparation and filing services that Intuit promised them.

87.     Intuit manipulated its software source code to prevent consumers running internet searches for free or low-cost tax services from discovering its "free file" website, steering them instead to its website with the false representations.  Further, Intuit made it impossible for consumers to navigate directly from the latter site to its actual "free file" site, and deliberately failed to inform consumers of their eligibility to file their tax returns for free even after they shared information with Intuit demonstrating such eligibility.

88.     By its deceptive, misleading, and improper conduct alleged herein, Intuit obtained money from, and was unjustly enriched at the expense of, Plaintiff and class members.

89.     It would be inequitable and unconscionable for Intuit to retain the profits, benefits, and other compensation it obtained through its deceptive, misleading, and improper conduct.

90.     Plaintiff and class members are entitled to restitution or disgorgement of, or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Intuit through its deceptive, misleading, and improper conduct.

### THIRD CLAIM FOR RELIEF

**Breach of Contract**
**(On Behalf of the Class)**

91.     Plaintiff incorporates all allegations set forth above.

92.     Plaintiff brings this claim on behalf of the class under California law.

93.     Intuit, through its membership in the Free File Alliance, entered into a valid and binding contract with the Internal Revenue Service (the "Agreement") to provide free tax

preparation and filing services to low-income taxpayers and to "clearly list" its "free customer service options."

94.     The Agreement was for the express and intended purpose of providing low-income Americans, like Plaintiff, with free tax filing services.  The Agreement states, in pertinent part, that "the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own."  The Agreement further states that "the federal government has pledged to not enter the tax preparation software and e-filing services marketplace" in consideration for the promise of Intuit, among other entities, to "cover[] the taxpayers least able to afford e-filing their returns on their own."

95.     Plaintiff and class members, accordingly, are third-party beneficiaries of the Agreement.

96.     Intuit breached the Agreement, and its obligations to Plaintiff and class members, by, among other things:

        a.      failing to comply with section 2.1, which requires Intuit to "[m]ake tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations";

        b.      failing to comply with section 2.3, which requires Intuit to "[p]rovide greater service and access to the Services to taxpayers," with "Services" defined in section 1.13 as "free, online tax return preparation and filing of Federal individual income tax returns";

        c.      failing to comply with section 4.15.14, which requires Intuit to "clearly list [its] free customer service options"; and

        d.      failing to comply with section 4.32.5, which provides that "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program . . . ."

97.     Intuit's breaches of the Agreement caused Plaintiff and class members to suffer ascertainable loss.  Plaintiff and class members qualified for free filing under the Agreement but were assessed a fee by Intuit to file a tax return.

CLASS ACTION COMPLAINT
CASE NO.

98.     Plaintiff and class members are entitled to damages in an amount to be determined at trial.

99.     Plaintiff and class members also seek an injunction requiring Intuit to comply with its obligations under the Agreement.

### FOURTH CLAIM FOR RELIEF

**Violations of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (FAL)**
**(On Behalf of the Subclass)**

100.     Plaintiff incorporates all allegations set forth above.

101.     Intuit committed acts of untrue and misleading advertising, as defined by California Business and Professions Code section 17500, by representing that its TurboTax service was guaranteed to be free when that was not true, as Intuit, after luring Plaintiff and subclass members to provide detailed tax-related information on its online TurboTax portal, charged them a substantial fee.

102.     Moreover, California Business and Professions Code section 17509 requires Intuit to conspicuously disclose the price of all of the services it requires consumers to purchase as a condition of sale.  Intuit failed to do so, in violation of clearly established California law.

103.     Plaintiff and subclass members had a legally protected interest in knowing from the outset, when they started to shop for tax preparation and filing services, the true prices of the services they chose to buy.  Intuit quashed that interest in violation of clearly established California law.

104.     Intuit's misrepresentations deceived or tended to deceive the general public regarding the existence and nature of its "free" tax preparation and filing services.

105.     A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

106.     Unless restrained by this Court, Intuit will continue to engage in untrue and misleading advertising, as alleged above, in violation of sections 17500 and 17509 of the Business and Professions Code.

19

CLASS ACTION COMPLAINT
CASE NO.

107.   As a result of the foregoing, Plaintiff and subclass members have been injured and have lost money or property and are entitled to restitution and injunctive relief.

## FIFTH CLAIM FOR RELIEF
### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL)
### (On Behalf of the Subclass)

108.   Plaintiff incorporates all allegations set forth above.

109.   Intuit's deceptive advertising, as alleged herein, constitutes unlawful, unfair, and fraudulent business conduct in violation of the UCL.

110.   Intuit's conduct is unlawful because it constitutes a bait-and-switch scheme that violates federal regulations providing that, "[e]ven though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception."  16 C.F.R. § 238.2.

111.   In addition to its unfair and misleading advertising, Intuit acted unscrupulously, in violation of the UCL's unfair prong, by manipulating its software source code to prevent consumers running internet searches for free or low-cost tax services from discovering its "free file" website, steering them instead to its website with the false representations; by making it impossible for consumers to navigate directly from the latter site to its actual "free file" site; and by deliberately failing to inform consumers of their eligibility to file for free even after they shared information with Intuit demonstrating such eligibility.

112.   Intuit's conduct in violation of the UCL directly and proximately caused Plaintiff and subclass members to suffer injury and lose money and property.  Plaintiff and subclass members are, consequently, entitled to restitution and injunctive relief.

## SIXTH CLAIM FOR RELIEF
### Violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (CLRA)
### (On Behalf of the Subclass)

113.   Plaintiff incorporates all allegations set forth above.

114.   Intuit is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "services" within the meaning of sections 1761(b) and 1770.

CLASS ACTION COMPLAINT
CASE NO.

115.   Intuit's acts and practices, as alleged in this complaint, violate the CLRA because they include unfair and deceptive acts and practices in connection with transactions (the sale of tax preparation and filing services).  In violation of California Civil Code section 1770(a)(9), Intuit advertised its tax preparation and filing services with intent not to sell them as advertised.

116.   A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

117.   Intuit engaged in the acts and practices alleged herein with the intent to induce consumers to purchase Intuit tax preparation and filing services.

118.   Intuit's acts and practices did in fact result in the sale of Intuit tax preparation and filing services to Plaintiff and subclass members, thereby causing them harm.

119.   Plaintiffs thus seek actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

120.   Under California Civil Code section 1782(a), on his own behalf and on behalf of the class, Plaintiff Dohrmann sent a CLRA notice to Intuit on May 13, 2019.  In the event the relief requested in the notice is not provided within 30 days, Plaintiff will amend this complaint to include a request for monetary damages pursuant to the CLRA.

121.   In accordance with California Civil Code section 1780(d), Plaintiff's CLRA venue declaration is attached hereto as Exhibit A.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment through an Order:

A.   Certifying the Class and Subclass under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;

B.   Awarding Plaintiff and class members all damages or restitution to which they are entitled by law;

CLASS ACTION COMPLAINT
CASE NO.

1                C.        Awarding Plaintiff and class members pre- and post-judgment interest as

2 provided by law;

3                D.        Enjoining Intuit from committing the unlawful acts and omissions

4 described in this complaint;

5                E.        Awarding reasonable attorneys' fees and costs as provided by law,

6 including under California Civil Code section 1780(e) and California Code of Civil Procedure

7 section 1021.5; and

8                F.        Granting all other and further relief the Court deems necessary, just and

9 proper.

10 **<u>DEMAND FOR JURY TRIAL</u>**

11 Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a trial by jury of

12 all causes of action triable as of right.

13

14 Dated:  May 13, 2019                Respectfully submitted,

15 **GIRARD SHARP LLP**

16 /s/ *Adam E. Polk*

17 Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)

18 Adam E. Polk (SBN 273000)

19 **GIRARD SHARP LLP**
601 California Street, Suite 1400

20 San Francisco, CA 94108

21 Telephone: (415) 981-4800
Facsimile: (415) 981-4846

22 dgirard@girardsharp.com

23 jelias@girardsharp.com
apolk@girardsharp.com

24

25 *Attorneys for Plaintiff*

26

27

28

CLASS ACTION COMPLAINT
CASE NO.

EXHIBIT A

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ANDREW DOHRMANN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>INTUIT INC.,<br><br>        Defendant. | Case No.<br><br>**CLRA VENUE DECLARATION OF PLAINTIFF ANDREW DOHRMANN PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

DocuSign Envelope ID: 1A306C6A-5449-475B-9F91-2B4575D51AFA

I, Andrew Dohrmann, declare as follows:

1.      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I am a Plaintiff in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      Defendant Intuit Inc. has its principal place of business Mountain View, California, which is within Santa Clara County.  Intuit conducts substantial business, including the acts and practices at issue in this action, within Santa Clara County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.   Executed on _____ 5/12/2019 _____ in Moraga, CA.

By: _____

ANDREW DOHRMANN

---

CLRA VENUE DECLARATION OF PLAINTIFF ANDREW DOHRMANN PURSUANT TO
CALIFORNIA CIVIL CODE SECTION 1780(d)