Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| ANDREW DOHRMANN, on behalf of himself and all others similarly situated, | Case No. 5:19-cv-02566-NC |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| INTUIT INC., H&R BLOCK, INC., and JOHN DOES 1-20, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## NATURE OF THE ACTION

1.     Defendants Intuit Inc. and H&R Block, Inc. advertised online tax services as free to Americans of modest means only to charge them fees once they had been lured into preparing their tax returns using online software.  Intuit and H&R Block engaged in concerted activity to deny taxpayers in low-income brackets the free tax-filing services to which they were entitled.  Intuit and H&R Block manipulated internet search results to steer low-income individuals to their websites with fraudulent misrepresentations, blocked consumers' ability to navigate to their free tax-filing sites once consumers clicked on the website with the misrepresentations, and purposely did not inform low-income individuals of their eligibility to file tax returns for free.

2.     Defendants' practices not only took advantage of low-income individuals but ran afoul of their obligation to permit these taxpayers to file for free.  In 2002, the Internal Revenue Service developed the "Free File" program, under which taxpayers whose income falls below a certain threshold can e-file their taxes for free.  The IRS, instead of creating its own software to handle free e-filing, contracted with a consortium of private companies to provide the service.  That consortium, the Free Filing Alliance, includes Intuit and H&R Block, which together control over two-thirds of the market for do-it-yourself online tax filing services.  The agreement between the IRS and these Defendants requires them to provide free e-filing services; in return, the IRS agreed not to develop and provide a competing e-filing service.  The agreement required Defendants to make a free product available and to promote it to achieve maximum public awareness.

3.     Both Intuit and H&R Block, however, acting in identical fashion, added code to their websites that hid their actual free e-filing services from the people for whom those services were intended.  According to ProPublica, which first reported the misconduct, the code "is deliberately saying: 'Google, we don't want you here.  Do not bring us traffic.'"  Intuit owns the popular TurboTax website, and H&R Block owns the official H&R Block website. The TurboTax and H&R Block webpages that put people on track to pay to file their taxes—in

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

contrast to Defendants' actually free sites—signal to Google that they *should* be listed in search results.

4. After luring low-income taxpayers to start preparing their returns, supposedly for free, and even after those taxpayers inputted information revealing themselves to be eligible for free filing, Defendants upsold them and manipulated them into paying for product upgrades, marketing tactics that are specifically prohibited in regard to qualifying free filers under the IRS agreement.

5. Defendants' predatory, parallel conduct imposed unexpected charges on the people least able to bear them. Defendants' conduct resulted from an anticompetitive agreement reached through the same industry consortium that negotiated with the IRS. And the consequence of Defendants' conduct is that while 100 million low-income taxpayers— often students, elderly people on fixed incomes, and people on public assistance—qualify for free e-filing of their return, fewer than 2.5 million American taxpayers use a free service.

6. Plaintiff, on behalf of a class of similarly situated individuals, brings this action to put a stop to Intuit's and H&R Block's wrongful conduct and to recover their damages.

## PARTIES

7. Plaintiff Andrew Dohrmann is a citizen and resident of Moraga, California.

8. Defendant Intuit Inc. ("Intuit") is a Delaware corporation with its principal place of business in Mountain View, California.

9. Defendant H&R Block, Inc. ("H&R Block") is a Missouri corporation with its principal place of business in Kansas City, Missouri.

10. Defendants John Does 1-20 include members of the Free File Alliance that are additional providers of online tax preparation and filing services, and which participated in the wrongful conduct described in this complaint by breaching the agreement with the IRS, blocking access to the free versions of their software via ordinary web searches, and steering taxpayers into paid versions of their products through means similar to those employed by Intuit and H&R Block. Plaintiff will amend the complaint to substitute the names of the Doe

Defendants within a reasonable period of time after their identities are discovered or revealed to Plaintiff.

## RELEVANT NONPARTY

11.     The Free File Alliance (the "Alliance") is a nonprofit consortium of tax software companies that have partnered with the IRS for the ostensible purpose of providing free electronic tax services. The Alliance operates "Free File," a service intended to give taxpayers access to various tax software options from Alliance members.

12.     Intuit and H&R Block are the largest members of the Alliance. Its other members are 1040NOW Corp., Drake Enterprises, ezTaxReturn.com, FileYourTaxes, Free Tax Returns, Liberty Tax, OnLine Taxes, TaxACT, TaxHawk, and TaxSlayer.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

14.     The Court also has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Intuit and class members are domiciled in different states.

15.     The Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with California to render the exercise of jurisdiction by this Court proper and necessary. Intuit's principal place of business is within this District, and Intuit entered into an unlawful combination with H&R Block.

16.     Venue is proper in this District under 15 U.S.C. § 15(a) and 28 U.S.C. § 1391(b) because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce was carried out in this District, Intuit resides and transacts business in this District, and H&R Block transacts business in this District.

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

**INTRADISTRICT ASSIGNMENT**

17.    Assignment to the San Jose Division is appropriate under Local Rule 3-2(c) because Intuit is headquartered in Mountain View, California and a substantial part of the conduct at issue in this case occurred in Santa Clara County.

**PLAINTIFF-SPECIFIC ALLEGATIONS**

18.    Plaintiff Andrew Dohrmann is a college student residing in Moraga, California. For both 2017 and 2018, Mr. Dohrmann's income was under $20,000. He used TurboTax to file his tax returns in both 2017 and 2018.

19.    Mr. Dohrmann filed his 2017 federal tax return through TurboTax on or about February 27, 2018, and he filed his 2018 federal tax return through TurboTax on or about April 14, 2019.

20.    Before purchasing TurboTax e-filing services in both 2017 and 2018, Mr. Dohrmann saw representations by Intuit on the internet and on television that its tax preparation services are "free." Representations Mr. Dohrmann saw include: "Free IRS Fed Filing Online"; "100% Free Tax Filing, $0 Fed, $0 state"; "Free Federal and State Taxes"; "Absolutely Free"; "You'll pay absolutely nothing to file your federal and state taxes online— we're your free tax filing solution"; "E-File Taxes Online for Free Today"; "Free Edition"; "Turbotax Free is free. Free, free free free"; and other similar representations that he would not need to pay to file his return through TurboTax.

21.    Mr. Dohrmann relied on Intuit's representations in deciding to navigate to the TurboTax website and begin inputting his tax information. Contrary to Intuit's representations, after Mr. Dohrmann inputted his information demonstrating his qualification for free e-filing, Intuit charged him for its services—approximately $77 in 2017 and $105 in 2018.

22.    Had Intuit accurately described the nature of its tax preparation services and made clear its intent to assess a fee, Mr. Dohrmann would not have navigated to TurboTax's website and inputted his information.

23.    Had Intuit made its free tax-filing product accessible, Mr. Dohrmann would have used it, rather than the paid version.

24. Mr. Dohrmann found the TurboTax website easy to use, and would like to continue to use it in the future. But, because of Intuit's fraud and other misconduct described in this Complaint, Mr. Dohrmann does not trust Intuit's representations about its tax preparation and filing services. As a result, although Mr. Dohrmann would like to use TurboTax again, he will not do so unless Intuit takes sufficient steps to ensure the accuracy of its representations about its services.

**COMMON FACTUAL ALLEGATIONS**

25. Intuit—developer of the TurboTax tax preparation and filing software—is the market leader in consumer tax software, holding between 60% and 70% of the online tax preparation market. The TurboTax software allows taxpayers to prepare and file tax returns online.

26. H&R Block also is an online tax-filing market leader. For 2018 alone, more than 5.5 million people prepared do-it-yourself online tax filings through H&R Block.

27. Millions of Americans prefer to file their taxes electronically, both for convenience and because tax refunds for electronical filings are processed faster than for conventional filings.

28. Intuit and H&R Block together control a significant majority—at least two-thirds—of the market for do-it-yourself online tax filings.

29. Though Intuit and H&R Block are required under an agreement with the IRS to provide their e-filing services for free to low-income taxpayers, Defendants have instead fraudulently lured taxpayers into their paid products while hiding the truly free version. Intuit has done so through a saturation advertising campaign, which in 2018 featured advertisements with the slogan "TurboTax Free is free. Free, free free free." Likewise, H&R Block misleadingly labels and advertises its private product, H&R Block "Free Online," in order to lure taxpayers into paying fees, even if they qualify for H&R Block's truly free filing service.

30. Through their deceptive practices, aimed at increasing their revenues, Intuit and H&R Block exploited vulnerable low-income members of society including students, the elderly, and the impoverished. Defendants' efforts have been successful: In 2018, Intuit earned

$2.5 billion in revenue derived from its TurboTax segment, a $300 million increase from 2017 and a $500 million increase from 2016.  In 2018, H&R Block disclosed revenue of more than $3 billion—$2 billion of which derived from its tax preparation business.  H&R Block's income from do-it-yourself tax preparation fees grew more than 8% from 2017 to 2018 alone.

## A.    The Free File Program

31.    Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 to restructure, modernize, and improve taxpayer protections and rights.  A central feature of the Act was its command to modernize computer systems and business processes to offer expanded electronic filing.  The IRS, as part of its mandate to improve the tax preparation and filing process for taxpayers, made free online tax preparation and filing services available for taxpayers meeting certain income criteria by entering into a partnership agreement—the "Free File Agreement" or "Agreement"—with the Alliance.  Those eligible for free tax services include "those taxpayers with an Adjusted Gross income equal to or less than 70 percent of all United States taxpayers or below for the prior year, including those least able to afford e-filing tax returns, based upon verifiable statistics in their tax return[.]"

32.    The primary objective of the Agreement is "extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."  The Agreement states that "to serve the greater good . . . the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own."

33.    Hence, under the Agreement, Intuit, H&R Block, and other Alliance members agreed to provide free online tax preparation and filing services "to taxpayers least able to afford e-filing tax returns."  In return, the IRS agreed not to compete with Defendants and other Alliance members, not to enter the software and e-filing services marketplace, and to link to the Alliance members' online tax preparation services websites.

34.    Defendants' agreement to provide free tax preparation and filing services for certain taxpayers followed years of competitive pressure from various state governments that

had begun offering their own free online tax services to taxpayers.  In SEC filings, Intuit and H&R Block each acknowledged the challenges those programs presented:

- **Intuit:** "We also face potential competitive challenges from publicly funded government entities that offer electronic tax preparation and filing services at no cost to individual taxpayers."

- **H&R Block:** "Government tax authorities and direct competitors may elect to expand free offerings in the future [which] could result in a loss of market share, lower revenues or lower margins."

In entering into the public-private partnership with the IRS, Defendants sought to fend off competition from free tax programs by aligning to control their own free filing platforms as members of the Alliance.  In doing so, Defendants attracted to their own websites millions of taxpayers seeking out the free tax services the federal government sought to make available.

35.     Since entering into the Agreement, Defendants have noted in SEC filings that participation in the Alliance served its intended purpose and was effective in repelling competition.  In their annual statements for 2014 and 2015, Defendants included nearly identical disclosures.

- **Intuit:** "Although the Free File Alliance has kept the federal government from being a direct competitor to Intuit's tax offerings, it has fostered additional online competition and may cause us to lose significant revenue opportunities."

- **H&R Block:** "Although the FFA has kept the federal government from becoming a direct competitor to our tax service offerings in the U.S., it fosters additional online competition and may cause us to lose significant revenue opportunities."

36.     Each Defendant's revenue attributable to tax preparation services has grown by several million dollars since 2014.

37.     The Agreement has been updated several times since it became effective in 2002. In October 2018, the IRS and the Alliance entered into their Eighth Memorandum of Understanding, which expires in 2021.  *See* Eighth Memorandum of Understanding on Service Standards and Disputes Between the Internal Revenue Service and Free File, Incorporated,

https://www.irs.gov/pub/irs-utl/Eight%20Free%20File%20MOU.pdf (last visited May 13, 2019).  Under the current version of the Agreement, Alliance members, including Intuit and H&R Block, remain obligated to provide free tax preparation and filing services to low-income Americans.

38.     Despite the Agreement's purpose of making free tax services widely available, it has been grossly underutilized by American taxpayers.  The IRS reported that over the years only 51.1 million federal tax returns have been filed using free tax-filing products, representing 3% of all people eligible to use those services.  In 2018, more than 100 million taxpayers were eligible to file for free.  Fewer than 2.5 million did so.

39.     The conduct of Defendants, market leaders in online tax preparation and filing, has substantially contributed to the underutilization by taxpayers of free filing services.  And, as taxpayers have been denied access to free filing services, Defendants' revenues from taxpayers have markedly grown.

### B.     Defendants' Deceptive Practices

40.     With respect to marketing, the Free File Agreement provides that the "Parties will coordinate with each other their respective marketing of these Free Services to provide uniformity and maximize public awareness."

41.     According to the IRS, "The Agreement . . . provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service" and "[i]t is also expected that Free File Alliance products will be equivalent to those offered for sale on the commercial market and thus are expected to have all of the features and operability of those commercial products."

42.     The current Agreement, moreover, flatly prohibits "Other Sales and Selling Activity: No marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program."

43.     In contravention of these and other obligations imposed by the Agreement, Defendants have deceived taxpayers into paying for their e-filing services.

44.    First, Defendants have each deliberately hidden the free version of their software from Google search by adding code on their websites directing Google and other search engines not to list the free product in online search results.  The code Defendants added can be found in a file called robots.txt or in an HTML tag, both of which only appear in a website's underlying code if they have been affirmatively added.  This code—which one web developer described as "a big 'No, don't go any further' sign"—is typically used on web pages that designers do not want to be public, such as sites for internal use only.  Defendants, however, used that code on their free filing portal, a site they had agreed to make accessible to taxpayers.

45.    Second, Defendants have each engaged in an aggressive and misleading marketing and advertising campaign, founded on the provision of "free" tax services.  But instead of directing taxpayers to their truly free tax software, Defendants—deploying a nearly identical methodology—led them to a paid version.

46.    Third, Defendants, again acting in a virtually identically manner, have misleadingly labeled their private software to create confusion among prospective taxpayers and make it more likely that they would pay for needed tax-filing services.

47.    Intuit named its Free File Agreement software TurboTax "Freedom Edition."  It is available to taxpayers with an adjusted gross income of $34,000 or less, those who are eligible for the Earned Income Tax Credit, or those on active military duty with an adjusted gross income of $66,000 or less.

48.    H&R Block named its Free File Agreement software H&R Block "Free File."  It is available to taxpayers between the ages of 17 and 51 with an adjusted gross income of $66,000 or less, those who are eligible for the Earned Income Tax Credit, or those on active military duty with an adjusted gross income of $66,000 or less.

49.    TurboTax Freedom Edition and H&R Block Free File are full-featured tax-filing software systems that enable the preparation and filing of federal tax returns, even complex ones, for free.  In addition to the Form 1040, for example, TurboTax Freedom Edition provides free access to over 100 other tax forms, including Schedules 1 through 6, 1099-MISC, and 1040 Schedules A-E, EIC, F, H, and J.

50.    In addition to offering that truly free software, Intuit and H&R Block each also provide private, far more limited tax preparation software that is deceptively labeled. Intuit's private system is named TurboTax "Free Edition"; H&R Block's is "Free Online." Intuit Free Edition and H&R Block Free Online are unconnected to the Free File Program. Instead, Defendants use this software to attract taxpayers in search of truly free software to their websites and prompt them to pay for add-on features.

51.    The distinction between "Freedom Edition" and "Free Edition" is unclear and confusing to those who visit a TurboTax website. The same is true of the distinction between "Free File" and "Free Online," for those who visit an H&R Block website.

52.    Both TurboTax Free Edition and H&R Block Free Online—Defendants' respective fee-generating products for low-income customers—lack many commonly used tax forms and functions. As a result, the software is insufficient for millions of Americans with a low income, including those paying off student loans.

53.    TurboTax Free Edition can be used only for "simple tax returns that can be filed on Form 1040 without any attached schedules." Similarly, H&R Block Free Online offers at least 50 fewer tax forms than H&R Block Free File. Taxpayers whose returns have even modest levels of complexity, such as independent contractors, homeowners, those with a health savings account, or those who own a business (regardless of its size), cannot prepare their returns using TurboTax Free Edition or H&R Block Free Online and are instead prompted to use Defendants' paid versions—ranging from $49.99 to $119.99 or more.

54.    Taxpayers who attempt to file at no charge using TurboTax Free Edition or H&R Block Free Online are prompted by those sites to pay, even after inputting information sufficient to notify Intuit or H&R Block that they qualify for free filing.

55.    According to a former Intuit employee, a new employee once proposed that customers who go through TurboTax's filing process and input information demonstrating their eligibility for free filing should receive a "hard recommendation" and be routed to a truly free product. The response to that suggestion was laughter, and then other meeting attendees

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

changed the subject. The same former employee explained that Intuit has "ways of detecting if you're paying too much, but they just don't do it."

56. H&R Block, too, instructs its customer service personnel to direct consumers away from Free File. A former H&R Block employee reported that it is "company policy" to steer customers away from Free File because "[t]he company is making money from the product," and further noted that "that money is eating into the clients' refund . . . ."

57. Both TurboTax Freedom Edition and H&R Block Free File, moreover, are hidden from those searching for them online and are easily confused with TurboTax Free Edition and H&R Block Free Online.

58. Intuit has aggressively marketed Free Edition through online and televised advertising, including a series of recent television advertisements with the slogan "Turbotax Free is free. Free, free free free."

59. H&R Block markets Free Online using the same essential strategy, making representations like "Get more with free tax filing from Block."

60. A former Intuit employee reported that "[t]he entire strategy is make sure people read the word 'free' and click our site and never use" an actually free product. He added that the "vast majority of people who click" on the Free Edition "will not pay $0."

61. Examples of Intuit's deceptive representations include the following:

100% Free Tax Filing, $0 Fed, $0 State | TurboTax® Free - Intuit
https://turbotax.intuit.com/personal-taxes/online/free-edition.jsp ▼
★★★★★ Rating: 4.8 - 37,953 reviews
Free federal taxes and state taxes. ... You'll pay nothing to file your simple federal and state taxes online—we're your free tax filing solution. ... e-File your federal and state tax return with direct deposit to get your fastest tax refund possible.
What Is an IRS 1040 Form? · What is a W-2 Form? · Student Loan Interest
You've visited this page 2 times. Last visit: 5/12/19



62.    Examples of H&R Block's deceptive representations include the following:

Free Online Tax Filing | H&R Block®

https://www.hrblock.com/online-tax-filing/free-online-tax-filing/ ▼

★★★★☆ Rating: 4.5 - 80,396 reviews - Free

Get more with **free tax filing** from **Block**. **H&R Block's free online tax filing** includes 45 forms required for filing – that's twice as many as TurboTax. ... **Free Online** Tax Filing – Product Features: Deluxe · Premium · Self Employed $104.99

H&R Block® Official Site | Free Federal Tax Filing | HRBlock.com

[Ad] www.hrblock.com/ ▼

★★★★☆ Rating for hrblock.com: 4.3 - 817 reviews

All Of The Care And Expertise, No Surprises Or Hidden Fees. Start Your Tax Return Today. Prepare And File Your Federal Tax Return For **Free** With **H&R Block**® & Get Your Max Refund!

Free Online Tax Prep

File Your Simple Federal Taxes For Free Today!

Free Tax Calculator

Estimate Your Tax Refund With Our Free Income Tax Calculator Today!

63.    The actually free, full-featured TurboTax Freedom Edition and H&R Block Free File are not conspicuously listed on Defendants' websites.

64.    Intuit offers Freedom Edition through an entirely separate website and makes it impossible to navigate directly to that site from the standard TurboTax webpages.

65.    Likewise, H&R Block offers Free File through an entirely separate website and makes it impossible to navigate directly to that site from the standard H&B Block webpages.

66.     Defendants' practices mislead and confuse taxpayers by concealing the truly free editions of their online tax filing services. As of early May 2019, if "TurboTax Free" or "H&R Block Free" was typed into Google, the top search results were links to TurboTax's "Free Edition" and H&R Block's "Free Online," respectively, with the "Freedom Edition" and "Free File" nowhere on the search results. As of the date of this Complaint, even if one searches "H&R Block Free File," the top result is a paid H&R Block advertisement for H&R Block's official site—not its Free File website:



67.     Defendants' manipulation included the purchase of advertisements at the top of Google search results that funneled consumers to paid tax-filing options instead of free ones. Google, in exchange for a fee, allows advertisers to specify various search phrases that will trigger display of certain advertisements. Defendants paid substantial sums to Google to ensure that people searching for terms like "turbo tax free" and "hr block free" would see advertisements for Defendants' paid e-filing services at the top of the ensuing Google search results.

68. Defendants, moreover, actively conceal their truly free software from those seeking it out. In one reported example, a graduate student with income of approximately $16,000 asked a TurboTax agent why there were no links to the Freedom Edition on its website. The TurboTax agent said, "Because it is an IRS product we built for them." When the student asked if TurboTax was managing the product, the agent replied, "No, the IRS is the one managing it." Those statements were false. Like Mr. Dohrmann, the student ended up paying to file his taxes despite qualifying for free filing. There have been several reports of similar statements by TurboTax agents distancing the company from its truly free product.

69. H&R Block likewise instructs its employees to steer consumers away from H&R Block Free File. Internal H&R Block guidance documents obtained by ProPublica, excerpted below, advise employees to "not send clients to this Web site unless they are specifically calling about the Free File program. We want to send users to our paid products before the free product, if at all possible."

---

**FFA Important Details**

- The Free File Alliance can be accessed via www.irs.gov.
- The Free File program is a free federal tax preparation and electronic filing program for eligible taxpayers developed through a partnership between the Internal Revenue Service (IRS) and the Free File Alliance LLC, a group of private-sector tax software companies.
- Do not send clients to this Web site unless they are specifically calling about the Free File program. We want to send users to our paid products before the free product, if at all possible.
- Eligibility requirements for H&R Block's Online Free File Alliance 2018:
  - Adjusted gross income (AGI) $66,000 or less

---

## C. **The Truth Emerges**

70. On April 22, 2019, ProPublica, a self-described "independent, nonprofit newsroom that produces investigative journalism with moral force," revealed that TurboTax has been deliberately steering low-income taxpayers away from Free File Agreement-affiliated tax services into its own paid software. *See* Justin Elliot & Lucas Waldron, *The TurboTax Trap: Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, ProPublica (April 22, 2019) (available at https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes) (last visited May 13, 2019). Investigative journalists at ProPublica ran a number of scenarios through TurboTax's home page for low-income workers,

such as a housekeeper earning $29,000 annually and a person working at Walgreens. When the journalists progressed through the TurboTax workflow, they were uniformly told they would need to pay a fee to file a return, despite Intuit's representations of "FREE Guaranteed."

71. ProPublica examined the source code on TurboTax's website, and determined that if one begins the process of preparing taxes on TurboTax.com, the code makes it impossible to navigate to the truly free version of the site.

72. At the time of the ProPublica article, even when taxpayers searched specifically for "TurboTax Freedom Edition," they were taken to a page with two buttons (reproduced below): "see if you qualify" and "start for free." Whereas clicking on the "see if you qualify" button navigated taxpayers to the truly free software, clicking on "start for free" navigated taxpayers to the paid version.



AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

73. In a follow-up article published April 26, 2019, ProPublica confirmed, after consulting with technical experts, that Intuit deliberately hid its truly free edition from Google Search. *See* Justin Elliot, *The TurboTax Trap: TurboTax Deliberately Hid Its Free File Page From Search Engines*, ProPublica (April 26, 2019) (available at https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines) (last visited May 13, 2019).

74. In the same April 26 article, ProPublica reported that H&R Block "also hid its H&R Block Free File product from Google using the same sort of code."

75. On April 28, Intuit announced it had changed the code so that the actually free version of TurboTax is no longer hidden from Google and other search engines. Similarly, on May 2, an H&R Block spokeswoman stated that "we have updated our search practices to make H&R Block's Free File offer even easier to find." Neither Defendant provided further details or explanation.

76. On May 2, ProPublica reported that H&R Block engaged in conduct indistinguishable from Intuit's. *See* Justin Elliot & Paul Kiel, *The TurboTax Trap: TurboTax and H&R Block Saw Free Tax Filing as a Threat—and Gutted It*, ProPublica (May 2, 2019) (available at https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo) (last visited May 14, 2019). ProPublica reported that H&R Block, like Intuit, "deliberately hid the free option and actively steered customers into paid products," and "explicitly instructs its customer service staff to push people away from its free offering."

77. Since publication of the ProPublica articles, taxpayers who sought but were unable to obtain free tax preparation and filing services have come forward, including the following:

- An active service member was charged $96 to file taxes.
- An 87-year-old on social security with an adjusted gross income of $11,000 had to pay $124.98 to file taxes.

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

- An unemployed woman recovering from chemotherapy with two disabled sons whose household earned approximately $30,000 was charged $200. The woman said, "Those $200 would have helped pay for rent."

- A freelancer earning $15 an hour was charged $154, and said, "To suddenly be saddled with [a] $154 fee for a service I will only use one day out of the year, when I file, is the worst kind of injustice for someone in my position."

- A man earning $5,000 a year paid $103.95 to file.

- A contractor earning $14,500 a year was charged $169 to file taxes. The contractor said, "That was a whole 1% of my total income . . . . How are they allowed to lie like this?"

**D.    Intuit and H&R Block Conspired to Deny Free Tax-Filing Services to Low-Income Americans**

78.    As shown in the foregoing discussion, Intuit and H&R Block acted in nearly identical fashion to deprive low-income taxpayers of the free services to which they were entitled. Intuit and H&R Block each falsely advertised services as free, only to impose fees on consumers once they were ensnared, after they had spent significant amounts of time entering information and were getting ready to file. Intuit and H&R Block also each used software source code to impede consumers' access to their actual free tax-filing sites, and each confusingly included the word "free" within the name of those sites as well as their sites imposing a fee.

79.    That Intuit and H&R Block engaged in parallel conduct is no coincidence. Their common conduct resulted from an agreement between them (and with other Alliance members) to restrict competition and drive low-income consumers to paid websites, in breach of their common agreement with the IRS to furnish free services to those consumers.

80.    Intuit and H&R Block acted jointly, through an industry consortium, the Alliance, in negotiating a series of novations to their Free File Agreement with the IRS. That industry group, in turn, provided Intuit and H&R Block with the means and opportunity to

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

collude so that their promise to provide free services to Americans of modest means would not reduce either of their profit streams.

81.    For Defendants, concerted activity in connection with Free File program was natural and habitual.  Intuit and H&R Block acted collectively, through the Alliance, with respect to their interactions with the federal government concerning the Free File program.

82.    Industry trade associations, like the Free File Alliance, make a market more susceptible to collusive behavior because they can provide a pretext under which conspirators can exchange sensitive company information like competitive goals.

83.    Their common membership in the Alliance gave Intuit and H&R Block numerous opportunities to discuss their shared goals in meetings, telephone conversations, and emails.  Those common goals included deriving revenue from all taxpayer segments, including from Americans with the lowest incomes.

84.    The market for online tax preparation and filing services is highly concentrated. In fact, that market is a duopoly, controlled by Intuit and H&R Block.  There are also significant barriers to entering the online tax service market, arising from Defendants' market dominance as well as the costs involved with developing software and infrastructure sufficient to process millions of tax returns.  As a result, Intuit and H&R Block were able to collude to deny free services to low-income taxpayers without realistic threat of another online provider attracting tax filings from a substantial number of low-income taxpayers.

85.    Other Alliance members joined and acted in furtherance of Defendants' conspiracy.  The websites of at least three other Alliance participants—TaxSlayer, TaxHawk Inc.'s FreeTaxUSA and Drake Software's 1040.com—have contained code similar to the relevant code of Intuit and H&R Block that hides their truly free offerings from Google and other search engines.

86.    Further facilitating the anticompetitive conduct of Intuit and H&R Block, online tax services are interchangeable.  Such services provided by one firm are readily substituted for those provided by another firm.  The interchangeable nature of the services at issue made it relatively easy to reach agreement on suppressing provision of those services for no charge.

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

87. Demand for online tax preparation and filing services, moreover, is inelastic, meaning taxpayers have little choice but to pay higher prices to purchase those services absent a lower-priced, or, in this case, free alternative. Since federal law requires filing taxes, and the cost of a traditional accountant exceeds the cost of Defendants' online services, the demand for those services was mostly unaffected by the prices Defendants charged low-income taxpayers.

88. Neither Intuit, nor H&R Block, acting in their own independent self-interest, would have engaged in the parallel conduct set forth above. If only one of these Defendants had advertised their services as free while preventing low-income consumers from receiving them for free, the second Defendant could have taken market share—and gained valuable consumer loyalty and goodwill—by highlighting the first Defendant's shortcomings and advertising that its own services actually were free.

89. Thus for either Defendant, acting independently, to have advertised their services as free while preventing low-income consumers from receiving them for free, would have been against their self-interest and is implausible.

**E.      Public Officials Have Condemned Defendants' Predatory Behavior**

90. In a May 2, 2019 letter to the Federal Trade Commission, Sen. Elizabeth Warren—joined by Sens. Edward J. Markey, Richard Blumenthal, Tammy Duckworth, Bernard Sanders, Cory A. Booker, and Ron Wyden; and Reps. Brad Sherman, Eleanor Holmes Norton, Donald Beyer, Jackie Speier, Katie Hill, and Earl Blumenauer—voiced outrage at Defendant's conduct.

91. Noting that the FTC Act's ban on "unfair methods of competition" includes "all violations of the Sherman Antitrust Act, including 'every . . . conspiracy in restraint of trade,'" Senator Warren wrote that "[a] review by Congressional staff discovered that at least five companies, all members of the Free File Alliance, engaged in substantially similar actions" and that this "parallel conduct merits investigation" and "likely increased prices for consumers who were reasonably unaware of the Free File option."

92. "Consumers have a reasonable expectation that available options will appear on internet searches, as long as they enter relevant key search terms," Senator Warren wrote.

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

"This behavior causes consumers material harm by steering them toward more expensive products. And it directly conflicts with the IRS's . . . agreement with the Free File Alliance, in which IRS agreed not to provide a service that would compete with private preparers."

93. Senator Warren added: "The fact that nearly half of Free File members are employing this deceptive practice is presumably a partial explanation for why so few eligible taxpayers use Free File at all."

94. Likewise, in an April 29 letter to the FTC, Rep. Katie Porter, Congresswoman for California's 45th Congressional District, attributed the fact that less than 3% of eligible taxpayers have used the Free File Program to Intuit's misdirection. Congresswoman Porter observed that, "As a result of upselling and marketing, families end up spending an estimated billion dollars a year in unnecessary filing fees."

95. Congresswoman Porter further stated that the misconduct was "particularly concerning in light of the [Alliance] companies' recent lobbying against the IRS creating a Free File portal of its own."

96. Sen. Ron Wyden, ranking member of the Senate Finance Committee, similarly stated that "ProPublica's latest reporting provides more evidence of dirty tricks from Intuit. Customers eligible to file for free were allegedly denied refunds and given false information about the Free File program."

97. Senators Wyden and Charles E. Grassley, Chairman of the Senate Finance Committee, wrote in a May 6 letter to the IRS that, "[i]f participants of the Free File program are actively inhibiting the ability of taxpayers to file for free, corrective action must be taken" with such action to include amending the IRS's agreement with the Alliance "as necessary to bar whatever deceptive acts and practices the IRS might uncover . . . ."

98. On May 9, four members of the House Ways and Means Committee—Reps. Richard E. Neal, Kevin Brady, John Lewis, and Mike Kelly—also wrote to the IRS. They stated that the Free File Program's mission of providing "disadvantaged and underserved taxpayers with the ability to file their federal income taxes for free" is not being accomplished, and requested a review of "marketing practices for the program, current oversight of the

program, and [to] identify additional opportunities to improve taxpayer participation in the program."

99.     State regulators have already opened probes into Intuit's improper conduct. On May 10, 2019, the New York Department of Financial Services announced that it had launched an investigation of Intuit, as well as several other Alliance members.

100.     Even apart from their Agreement with the IRS, and their unlawful agreement to restrain competition, Defendants' conduct violates federal and state prohibitions on the use of "bait-and-switch" advertising practices. Federal regulations provide that, "[e]ven though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception." 16 C.F.R. § 238.2.

101.     The FTC advises businesses: "If you advertise online, remember the rules and guidelines that protect consumers also help businesses by maintaining the credibility of the Internet as a marketing medium. In addition, truth-in-advertising standards apply if you sell computers, software, apps, or other products or services."

## CLASS ACTION ALLEGATIONS

102.     Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following Class and Subclass:

### Class

All individuals in the United States who, between 2015 and the present, paid a fee to file a federal income tax return through the TurboTax or H&R Block websites, and qualified to file such tax return for free under the IRS Free Filing Program.

### Subclass

All individuals in California who, between 2015 and the present, paid a fee to file a federal income tax return through the TurboTax or H&R Block websites, and qualified to file such tax return for free under the IRS Free Filing Program.

103.     The following persons and entities are excluded from the Class: Defendants, their officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation.

21

Plaintiff reserves the right to modify, change, or expand the class definition, including proposing additional subclasses, based upon discovery and further investigation.

104.    **Numerosity.**  Class members are so numerous that joinder is impracticable.  At least tens of thousands of individuals were deceived by Intuit's scheme to defraud.

105.    **Typicality.**  Plaintiff's claims are typical of the claims of all class members.  Plaintiff, like all class members, paid Intuit or H&R Block a fee to file a federal income tax return online, despite being eligible for free filing.

106.    **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class.  They have no interests antagonistic to the interests of other class members and are committed to vigorously prosecuting this case.  Plaintiff has retained competent counsel experienced in the prosecution of consumer protection class actions.

107.    **Commonality and Predominance.**  Questions of law and fact common to the class members predominate over questions that may affect only individual class members.  Questions of law and fact common to the Class include:

a.      Whether Intuit and H&R Block entered into an anticompetitive agreement not to honor their Agreement with the IRS;

b.      Whether Intuit's and H&R Block's representations that their online tax-filing services were free were false and misleading in view of the charges Intuit and H&R Block imposed on Plaintiff and class members;

c.      Whether Intuit's and H&R Block's representations that their online tax-filing services were free were designed to, and did, induce Plaintiff and class members to use Intuit's and H&R Block's online tax preparation and filing system, and spend time gathering and inputting factual details to submit their tax returns, before being informed that Intuit's and H&R Block's services were not actually free;

d.      Whether Intuit's and H&R Block's representations that their online tax-filing services were free would be important to a reasonable consumer's decision whether to use TurboTax to prepare and file a tax return;

e. Whether Intuit's and H&R Block's online representations that their online tax-filing services were free constituted bait-and-switch advertising;

f. Whether Intuit and H&R Block engaged in other improper conduct in furtherance of their misrepresentations, including manipulation of software source code and online ad placements to impede low-income taxpayers' ability to discover and navigate to their free tax-filing websites;

g. Whether Intuit and H&R Block derived ill-gotten gains from their conduct alleged herein that should be restored to Plaintiff and class members;

h. Whether Plaintiff and class members are third-party beneficiaries of Intuit's and H&R Block's contract with the Internal Revenue System (the "Agreement");

i. Whether Intuit and H&R Block breached obligations under the Agreement;

j. Whether Intuit's and H&R Block's conduct alleged herein violates California consumer protection statutes;

k. Whether Intuit and H&R Block should be enjoined from continuing to perpetrate their scheme described herein; and

l. The amount of damages or restitution to which Plaintiff and class members are entitled.

108. **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and because of Defendants' financial resources, class members are not likely to pursue legal redress individually for the violations detailed in this Complaint. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

109.    **Injunctive Relief.**  Class certification is also appropriate under Rules 23(b)(2) because Defendants acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

## FIRST CLAIM FOR RELIEF

### Restraint of Trade in Violation of the Sherman Act, 15 U.S.C. § 1
### (On Behalf of the Class)

110.    Plaintiff incorporates all allegations set forth above.

111.    Plaintiff brings this claim against Intuit and H&R Block.

112.    At all relevant times, Intuit and H&R Block sold to United States purchasers online tax preparation and filing services in a continuous and uninterrupted flow of interstate commerce, including through and into this District.

113.    At all relevant times, Intuit and H&R Block entered into a continuing combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in the market for do-it-yourself online tax preparation and filing services.

114.    In particular, Defendants have combined and conspired to suppress the availability to low-income Americans of free online tax preparation and filing services.  The intent and effect of Defendants' unlawful combination was to cause low-income Americans to pay for such services or pay more for such services when, absent Defendants' combination, in a competitive market, the services would (and should) have been free or offered at a lower cost.

115.    As a result of Defendants' unlawful conduct and acts taken in furtherance of their conspiracy, prices for online tax preparation and filing services were raised, fixed, maintained, or stabilized at artificially inflated levels.

116.    The combination or conspiracy between Defendants consisted of a continuing agreement, understanding, and concerted action between them.

117.    For purposes of formulating and effectuating their combination or conspiracy, Defendants and their co-conspirators did those things they combined or conspired to do,

including impeding consumer access to their free tax-filing web portals and charging low-income Americans a fee for online tax-filing services.

118. Defendants' anticompetitive and unlawful conduct is illegal *per se*.

119. As a result of Defendants' anticompetitive and unlawful conduct, Plaintiff and class members have been injured in their business and property in that they paid more for Defendants' online tax-filing services than they otherwise would have paid in the absence of Defendants' conduct.

120. Plaintiff and class members are, therefore, entitled to a joint and several judgment in their favor, and against Defendants, providing for actual and treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15.

## SECOND CLAIM FOR RELIEF
### Intentional Misrepresentation
### (On Behalf of the Class)

121. Plaintiff incorporates all allegations set forth above.

122. Plaintiff brings this claim against Intuit under California law.

123. In the course of conducting its business of providing tax preparation and filing services, Intuit intentionally made material misrepresentations to Plaintiff and class members.

124. Intuit falsely represented that its TurboTax service was guaranteed to be free, for the purpose and with the effect of inducing Plaintiff and class members to provide detailed tax-related information on Intuit's online TurboTax portal. At the end of that process, Intuit revealed that its services were not, in fact, free and assessed Plaintiff and class members a substantial fee.

125. Intuit knew that the misrepresentations alleged herein were false at the time Intuit made them.

126. In making the misrepresentations alleged herein, Intuit intended that Plaintiff and class members rely on them and purchase its TurboTax services.

127. Plaintiff and class members reasonably and justifiably relied to their detriment on Intuit's intentional misrepresentations.

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

128.     Intuit's false representations that its tax services would be free are objectively material.  A reasonable person would attach importance to them and, in making purchase decisions, would be induced to act on the information Intuit provided.  Reliance on Intuit's false representations may, therefore, be presumed as a matter of law.

129.     Intuit's intentional misrepresentations directly and proximately caused Plaintiff and class members to incur ascertainable losses, by paying for TurboTax services.

130.     Intuit directly benefited from, and was improperly enriched by, its systemic intentional misrepresentations.

131.     Intuit acted with malice by engaging in the conduct alleged herein, which was specifically intended by Intuit to cause substantial injury to Plaintiff and class members.

132.     Intuit's conduct alleged herein constitutes fraud because it involved intentional misrepresentations, deceit, and concealment of material facts known to Intuit, and was done with the intent to cause injury to low-income individuals in search of affordable tax preparation and filing services.

133.     Plaintiff and class members are entitled to actual and punitive damages in an amount to be determined at trial.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
**(On Behalf of the Class)**

134.     Plaintiff incorporates all allegations set forth above.

135.     Plaintiff brings this claim against Intuit under California law.

136.     Intuit made false representations to Plaintiff and class members which Intuit did not intend to keep, and which Intuit in fact did not keep, to induce Plaintiff and class members to purchase Intuit's TurboTax services.  Plaintiff and class members reasonably relied on Intuit's false promises and did not receive the free tax preparation and filing services that Intuit promised them.

137.     Intuit manipulated its software source code to prevent consumers running internet searches for free or low-cost tax services from discovering its "free file" website,

steering them instead to its website with the false representations. Further, Intuit made it impossible for consumers to navigate directly from the latter site to its actual "free file" site, and deliberately failed to inform consumers of their eligibility to file their tax returns for free even after they shared information with Intuit demonstrating such eligibility.

138. By its deceptive, misleading, and improper conduct alleged herein, Intuit obtained money from, and was unjustly enriched at the expense of, Plaintiff and class members.

139. It would be inequitable and unconscionable for Intuit to retain the profits, benefits, and other compensation it obtained through its deceptive, misleading, and improper conduct.

140. Plaintiff and class members are entitled to restitution or disgorgement of, or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Intuit through its deceptive, misleading, and improper conduct.

## FOURTH CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of the Class)

141. Plaintiff incorporates all allegations set forth above.

142. Plaintiff brings this claim against Intuit under California law.

143. Intuit, through its membership in the Free File Alliance, entered into a valid and binding contract with the Internal Revenue Service (the "Agreement") to provide free tax preparation and filing services to low-income taxpayers and to "clearly list" its "free customer service options."

144. The Agreement was for the express and intended purpose of providing low-income Americans, like Plaintiff, with free tax-filing services. The Agreement states, in pertinent part, that "the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own." The Agreement further states that "the federal government has pledged to not enter the tax preparation software and e-filing services

marketplace" in consideration for the promise of Intuit, among other entities, to "cover[] the taxpayers least able to afford e-filing their returns on their own."

145. Plaintiff and class members, accordingly, are third-party beneficiaries of the Agreement.

146. Intuit breached the Agreement, and its obligations to Plaintiff and class members, by, among other things:

       a.      failing to comply with Section 2.1, which requires Intuit to "[m]ake tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations";

       b.      failing to comply with Section 2.3, which requires Intuit to "[p]rovide greater service and access to the Services to taxpayers," with "Services" defined in Section 1.13 as "free, online tax return preparation and filing of Federal individual income tax returns";

       c.      failing to comply with Section 4.15.14, which requires Intuit to "clearly list [its] free customer service options"; and

       d.      failing to comply with Section 4.32.5, which provides that "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program . . . ."

147. Intuit's breaches of the Agreement caused Plaintiff and class members to suffer ascertainable loss. Plaintiff and class members qualified for free filing under the Agreement but were assessed a fee by Intuit to file a tax return.

148. Plaintiff and class members are entitled to damages in an amount to be determined at trial.

149. Plaintiff and class members also seek an injunction requiring Intuit to comply with its obligations under the Agreement.

# FIFTH CLAIM FOR RELIEF

## Violations of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (FAL)
## (On Behalf of the Subclass)

150.    Plaintiff incorporates all allegations set forth above.

151.    Plaintiff brings this claim against Intuit.

152.    Intuit committed acts of untrue and misleading advertising, as defined by California Business and Professions Code Section 17500, by representing that its TurboTax service was guaranteed to be free when that was not true, as Intuit, after luring Plaintiff and subclass members to provide detailed tax-related information on its online TurboTax portal, charged them a substantial fee.

153.    Moreover, California Business and Professions Code Section 17509 requires Intuit to conspicuously disclose the price of all of the services it requires consumers to purchase as a condition of sale.  Intuit failed to do so, in violation of clearly established California law.

154.    Plaintiff and subclass members had a legally protected interest in knowing from the outset, when they started to shop for tax preparation and filing services, the true prices of the services they chose to buy.  Intuit quashed that interest in violation of clearly established California law.

155.    Intuit's misrepresentations deceived or tended to deceive the general public regarding the existence and nature of its "free" tax preparation and filing services.

156.    A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

157.    Unless restrained by this Court, Intuit will continue to engage in untrue and misleading advertising, as alleged above, in violation of Sections 17500 and 17509 of the Business and Professions Code.

158.    By reason of the foregoing, Plaintiff and subclass members have been injured and have lost money or property and are entitled to restitution and injunctive relief.

## SIXTH CLAIM FOR RELIEF

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL)
### (On Behalf of the Subclass)

159.    Plaintiff incorporates all allegations set forth above.

160.    Plaintiff brings this claim against Intuit and H&R Block.

161.    Intuit's and H&R Block's deceptive advertising, as alleged herein, constitutes unlawful, unfair, and fraudulent business conduct in violation of the UCL.

162.    Intuit's and H&R Block's conduct is unlawful because it violates the Sherman Act and because it constitutes a bait-and-switch scheme that violates federal regulations providing that, "[e]ven though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception." 16 C.F.R. § 238.2.

163.    In addition to their unfair and misleading advertising, Defendants acted unscrupulously, in violation of the UCL's unfair prong, by manipulating their software source code to prevent consumers running internet searches for free or low-cost tax services from discovering Defendants' "free file" websites, steering consumers instead to their websites with the false representations; by making it impossible for consumers to navigate directly from the latter sites to Defendants' actual "free file" sites; and by deliberately failing to inform consumers of their eligibility to file for free even after they shared information with Defendants demonstrating such eligibility.

164.    Defendants' conduct in violation of the UCL directly and proximately caused Plaintiff and subclass members to suffer injury and lose money and property. Plaintiff and subclass members are, consequently, entitled to restitution and injunctive relief.

## SEVENTH CLAIM FOR RELIEF

### Violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (CLRA)
### (On Behalf of the Subclass)

165.    Plaintiff incorporates all allegations set forth above.

166.    Plaintiff brings this claim against Intuit.

167.    Intuit is a "person" within the meaning of California Civil Code Sections 1761(c) and 1770, and provided "services" within the meaning of Sections 1761(b) and 1770.

168.    Intuit's acts and practices, as alleged in this Complaint, violate the CLRA because they include unfair and deceptive acts and practices in connection with transactions (the sale of tax preparation and filing services).  In violation of California Civil Code Section 1770(a)(9), Intuit advertised its tax preparation and filing services with intent not to sell them as advertised.

169.    A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

170.    Intuit engaged in the acts and practices alleged herein with the intent to induce consumers to purchase Intuit tax preparation and filing services.

171.    Intuit's acts and practices did in fact result in the sale of Intuit tax preparation and filing services to Plaintiff and subclass members, thereby causing them harm.

172.    Plaintiff thus seeks actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

173.    Under California Civil Code Section 1782(a), on his own behalf and on behalf of the class, Plaintiff Dohrmann sent a CLRA notice to Intuit on May 13, 2019.  In the event the relief requested in the notice is not provided within 30 days, Plaintiff will amend this Complaint to include a request for monetary damages pursuant to the CLRA.

174.    In accordance with California Civil Code Section 1780(d), Plaintiff's CLRA venue declaration is attached hereto as Exhibit A.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court issue an Order or Orders:

A.    Certifying the Class and Subclass under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;

B.    Entering a joint and several judgment in favor of Plaintiff and the Class and against Intuit and H&R Block;

C.    Awarding Plaintiff and class members all damages, including treble or punitive damages, or restitution to which they are entitled by law;

D.      Awarding Plaintiff and class members pre- and post-judgment interest as provided by law;

E.      Enjoining Intuit and H&R Block from committing the unlawful acts and omissions described in this Complaint;

F.      Awarding reasonable attorneys' fees and costs as provided by law, including under Section 4 of the Clayton Act, 15 U.S.C. § 15, California Civil Code Section 1780(e), and California Code of Civil Procedure Section 1021.5; and

G.      Granting all other and further relief the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a trial by jury of all causes of action triable as of right.


Dated:  May 14, 2019                          Respectfully submitted,

**GIRARD SHARP LLP**

/s/ *Adam E. Polk*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiff*

AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-02566-NC

EXHIBIT A

DocuSign Envelope ID: 1A306C6A-5449-475B-9E91-2B1575D54AFA

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ANDREW DOHRMANN, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br>   v.<br><br>INTUIT INC.,<br><br>          Defendant. | Case No.<br><br>**CLRA VENUE DECLARATION OF PLAINTIFF ANDREW DOHRMANN PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

DocuSign Envelope ID: 1A306C6A-5449-475B-9E91-2B1575D54AFA

I, Andrew Dohrmann, declare as follows:

1.    I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.    I am a Plaintiff in the above-captioned action.

3.    I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

4.    The Class Action Complaint has been filed in the proper place for trial of this action.

5.    Defendant Intuit Inc. has its principal place of business Mountain View, California, which is within Santa Clara County.  Intuit conducts substantial business, including the acts and practices at issue in this action, within Santa Clara County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.   Executed on ___5/12/2019___ in Moraga, CA.

By: _____
ANDREW DOHRMANN

CLRA VENUE DECLARATION OF PLAINTIFF ANDREW DOHRMANN PURSUANT TO
CALIFORNIA CIVIL CODE SECTION 1780(d)